**UNITED STATES of America**

v.

**Mildred CARRASQUILLO et al.**

**Crim. No. 75–726.**

United States District Court,
E. D. Pennsylvania.

May 3, 1976.

Robert E. J. Curran, U. S. Atty., Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Andre L. Dennis, Philadelphia, Pa., for Carrasquillo.

Daniel J. DiGiacomo, Philadelphia, Pa., for William Ortiz.

Barry L. Adelman, Philadelphia, Pa., for Magda Ayala.

Ronald J. Harper, Philadelphia, Pa., for Maria Ayala.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Defendants were indicted on a charge of conspiring to distribute heroin and to possess heroin with the intent to distribute. The jury returned a verdict of not guilty in the case of Michael Hernandez and guilty in the cases of the remaining four defendants: Mildred Carrasquillo, Maria Ayala, Magda Ayala, and William Ortiz. Each of these four defendants has moved for a judgment of acquittal or, in the alternative, for a new trial. We shall deny all the motions. Only the motion for a new trial on behalf of William Ortiz warrants an extended discussion.

The government's case against Ortiz was based entirely on the testimony of two un-indicted co-conspirators. The first, Robert Dempster, testified that he visited the residence of 4240 Reese Street, Philadelphia, between 100 and 200 times starting in February or March, 1974 in order to purchase heroin. On two of these occasions he observed the defendant Ortiz. On both occasions, Dempster was in the residence and heard a horn beep. Ortiz entered the residence on each occasion carrying a bag. The first time Ortiz handed the bag to the defendant Carrasquillo and then left the residence. Carrasquillo then gave Dempster heroin from the bag delivered by Ortiz. Dempster testified that on the second occasion he observed Ortiz deliver a package, although Dempster could not recall to whom. Ortiz left immediately thereafter and Dempster was given the heroin.

On cross-examination, Dempster admitted that in his first statement, to police officer Thompson, on February 25, 1975, he did not mention William Ortiz. In his second statement, to the grand jury, he testified that he was present once when Ortiz delivered a brown bag.

The other government witness against Ortiz was Linda Lasasso. She testified that she visited 4240 Reese Street on many occasions from the beginning of 1975. She further stated that she purchased heroin from Ortiz at that address less than a dozen times. On cross-examination, she narrowed the number of times she purchased from Ortiz to between five and twelve times.

Ortiz was mentioned by two other government witnesses. Officer Dennis Carroll testified that Ortiz was present, along with Michael Hernandez and three non-defendants, when thirteen bundles of heroin were confiscated from 4240 Reese Street on June 3, 1975. Officer Richard Jumper testified that Ortiz was arrested, along with defendant Hernandez, after they left the residence of 4240 Reese Street following a heroin purchase by Lasasso on June 13,

1975. Ortiz was searched and no heroin was found on him. The jury was instructed to disregard the testimony of Ortiz's arrest.

At the close of the government's case, we denied Ortiz's motion for judgment of acquittal. In his defense, Ortiz testified that he never sold heroin and never observed the other defendants sell heroin. On cross-examination, the assistant United States attorney probed Ortiz's source of income. Ortiz stated that he had two part-time jobs. Over defense counsel's objection, the government attorney asked Ortiz if he had had over $1000 on his person in February 1975. Ortiz admitted that he had and stated that he obtained the money by selling two cars.

In rebuttal, the government sought to prove: (1) that bills totaling $1050 were found on Ortiz on February 7, 1975; (2) that among these bills were $35 in marked currency; and (3) that these marked bills had been used in a purchase of heroin two days earlier by Robert Dempster at 4240 Reese Street. Defense counsel objected because we had suppressed testimony concerning the marked bills after a pretrial hearing at which we concluded that such evidence resulted from an unconstitutional search and seizure. The government countered that this evidence was admissible under *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) and *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). We concluded that the evidence was indeed admissible to impeach the credibility of Ortiz's assertion that the money came from the proceeds of the two car sales and therefore overruled the objection.

The government called Officer Joseph O'Hara who testified that he seized $1050 from Ortiz on February 7, 1975. These bills included three tens and one five which contained Officer Raymond Stackhouse's badge number in the upper left-hand corner.

O'Hara testified that he then called Stackhouse and asked him to read the serial numbers from the bills which he had given Dempster to use to purchase heroin at 4240 Reese Street. At this point an objection based on the best evidence rule was interposed and withdrawn. When Officer O'Hara testified that the serial numbers recorded by Officer Stackhouse matched those on the bills seized from Ortiz, we sustained the objection based on the hearsay rule.

The government then called Officer Stackhouse who testified that he recorded the serial numbers on three $10 bills and one $5 bill before giving those bills to Robert Dempster to purchase heroin. He then read those serial numbers to the jury.

Officer O'Hara was recalled and testified that the numbers on the bills he seized matched those recorded by Stackhouse.

At this point, the assistant United States attorney informed us at side bar that he would be unable to demonstrate that the bills were unavailable without the use of hearsay. Because the testimony concerning the bills was not the best evidence, and because the government was unable to demonstrate their unavailability, we ordered all the testimony of Officers O'Hara and Stackhouse stricken. We instructed the jury to disregard that testimony "in toto."

Defendant Ortiz has moved for a new trial based on the claimed error in admitting the testimony about the marked bills. Despite the fact that the testimony was stricken, we cannot, given the relative paucity of the evidence against Ortiz, conclude with any certainty that the stricken testimony played no part in the jury's deliberations.[1] Therefore, we must decide whether our original decision to allow the testimony, over defense counsel's objection, was proper.

---

1. The testimony of Robert Dempster cannot be given great weight since there was no evidence that Ortiz knew that the bags contained heroin or that he was present when heroin was removed from the bags. Because the government's case against defendant Martha Morera consisted exclusively of similar testimony, we granted Morera's motion for judgment of acquittal which the government did not oppose.

As for the testimony of Linda Lasasso, it was direct and certainly sufficient to support the jury's guilty verdict. However, Lasasso also

Defendant asserts that, because we suppressed the evidence of the marked bills at the pretrial hearing, the government was precluded from introducing it. However, while the government may not introduce suppressed evidence in its case-in-chief, it may use it to impeach the credibility of a defendant who testifies. *Oregon v. Hass, supra; Harris v. New York, supra.* We think it irrelevant that the testimony which the government sought to impeach; *i. e.,* that Ortiz's source of income which accounted for his possession of over $1000 was the sale of two automobiles, was elicited on cross-examination. Federal Rule of Evidence 607 allows the impeachment of a witness by any party, including the party calling him. Certainly if the government may impeach the credibility of its own witness, it may impeach that of a defendant after cross-examination.

Nor can we say that the impeachment here related to a collateral matter. The source of Ortiz's income and his denial of involvement with the sale of heroin were issues central to the determination of his guilt or innocence of the conspiracy charge. Once Ortiz admitted having over $1000 on his person and claimed that its source was the sale of automobiles, the government was entitled to impeach by demonstrating that some of the bills had been used to purchase heroin two days earlier. Such evidence would surely cast doubt on Ortiz's claim that the sale of heroin was not a source of income to him.

Of course, all this testimony was stricken on defendant's motion and so defendant himself eliminated any opportunity to rebut its effect by offering any explanation as to how he obtained the marked bills. Nor was he able to obtain the benefit of the usual cautionary instruction to the jury that it could consider the evidence of the bills only as to the issue of his credibility and not as any substantive evidence of guilt. This resulted, however, from defense counsel's own tactical decision to press his objection on the best evidence ground and to move to strike. We are satisfied that no error was committed in allowing the testimony as to the marked bills.

In addition, we find defendant's second basis for a new trial, *i. e.,* our failure to grant a mistrial after the government questioned Ortiz as to whether his father sold heroin, without merit. Ortiz testified that his father, for whom he worked, does not sell heroin, and we twice instructed the jury to disregard the question. In fact, the second time we elaborated to the jury that:

> "Obviously there isn't a shred of evidence that Mr. Ortiz's father is anything other than a perfectly respectable businessman with a hobby store or whatnot store at

---

directly implicated defendant Hernandez. After the jury asked us which witness had identified Hernandez as the one from whom heroin was bought, we informed the jury that the witness was Lasasso. The jury then returned a verdict of not guilty in Hernandez's case. This sequence would seem to indicate that the jury had at least a reasonable doubt about Lasasso's credibility.

We are unwilling to say that the jury necessarily considered the testimony which we had instructed it to disregard. We merely acknowledge that this is a possibility.

If our instruction to the jury to disregard the testimony was ineffective, then defendant may have been able to persist in his best evidence objection by claiming that the striking of the testimony was not sufficient to undo the damage done by the jury hearing the verbal testimony about the marked bills. However, defendant did not move for a mistrial nor has he

argued in his motion for a new trial any claim based on the best evidence rule. Thus, we are left solely with the claim that we erred in originally allowing the testimony over counsel's objection that the receipt of this evidence violated our suppression order.

We note, in passing, that defendants Carrasquillo and Magda Ayala have, in their motions for a new trial, raised the issue of the insufficiency of our instruction to cure the best evidence problem. However, despite the fact that a conspiracy charge allows evidence against one co-conspirator to be considered against all other co-conspirators, we are satisfied that the other defendants were not unduly prejudiced by this evidence which, if considered at all, was likely to be damaging only to Ortiz. There was also a failure to move for a mistrial on behalf of these defendants. In all events, we are convinced, given the overwhelming evidence against these other defendants, that the error, if any, was harmless.

"17th and Mt. Vernon and that you should absolutely not consider in any way, shape or form." N. T. 625.

We are satisfied that the question played no part in the jury's consideration.

We will deny Ortiz's motion for judgment of acquittal or, in the alternative, for a new trial. Additionally, we will deny all other defendants' motions. We are convinced that these motions are without merit and that the guilty verdicts are supported by more than ample evidence.